CITY BANK FARMERS TRUST COMPANY *et al. vs.* EDITH BISHOP TAYLOR *et al.*

JANUARY 13, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J. This bill in equity for instructions is brought by the trustees under the will of Moses Taylor, late of Portsmouth. All the persons interested in the questions presented have been made parties. A guardian *ad litem* appears for the minor respondents and also represents the contingent interest of persons not in being or not ascertainable. The cause, being ready for hearing for final decree, has been certified to this court for determination as required by §4968, General Laws 1923.

The questions presented arise from the following facts. Moses Taylor died May 26, 1928, possessed of a very large estate. He disposed of this estate by his will, dated October 25, 1926, which was duly admitted to probate by the probate court of Portsmouth. His executors paid from his personal estate not specifically bequeathed his debts, funeral and administration expenses, the pecuniary legacies, the federal estate tax, the estate, legacy and succession taxes imposed by this State and the other inheritance, legacy, succession and transfer taxes payable by the executors, and in their accounts charged such payments against capital. After such charges there remained in the executors' possession a large amount of personal estate representing capital; and such capital, except for a comparatively small amount still unadministered by the executors, has been paid and transferred to the complainants as trustees under the residuary trust.

During the period of the administration of the estate the executors collected large amounts of income from the personal estate in their possession, including income accruing on the personal estate used for the payment of the above-mentioned items charged against capital. From time to time large amounts of income have been paid by the executors to the complainants as trustees under the residuary trust.

The trustees allege that they are in doubt as to the amount of income payable to the testator's widow, Edith

Bishop Taylor, as life beneficiary under the residuary trust and ask for instructions on four questions of law raised by the facts stated; the first and fourth questions being summarized as follows: (1) whether, in determining the income payable to the testator's widow as life beneficiary, the income attributable to the portion of the personal estate charged by the executors with the payment of the debts, funeral and administration expenses and the pecuniary legacies, excepting the legacy of $250,000 bequeathed in trust by the fifth clause, should be treated as income payable to her; (4) whether, in determining the income payable to her as life beneficiary, the income attributable to the portion of the personal estate charged by the executors with the payment of all estate, inheritance, legacy, succession and transfer taxes should be treated as income payable to her.

Broadly stated the question is whether the beneficiary for life of the income of a trust estate consisting of the rest, residue and remainder of the estate of the testator is entitled to the income from that portion of his estate necessary to be used by his executor for the payment of his debts, liabilities and all federal and state inheritance taxes. Mrs. Taylor, the first life beneficiary, contends that she is entitled to all said income, and the life beneficiaries of the trust estate after her decease and the remaindermen oppose her contention and claim that the whole, or at least a part of such income, should be used to pay the testator's debts, liabilities and inheritance taxes. Counsel for three trust companies and trustees of estates which will be affected by our opinion have been permitted to file briefs in behalf of their clients. They oppose the contention made by the testator's widow.

The reason for the doubt of the trustees in this matter, and the divergent claims of counsel as to the correct answers to the questions presented, is that this court has not heretofore decided them and that other courts differ on the rule to be applied in adjusting the rights of the life beneficiary and the remaindermen.

The Massachusetts and the New Jersey courts hold that in determining the income payable to the life beneficiary under a residuary trust, the liabilities and taxes are chargeable to capital, and that all the income accruing on the capital applied to their payment, between the testator's death and the date of the payment of his liabilities and taxes, is payable to such life beneficiary. *Old Colony Trust Co.* v. *Smith,* 266 Mass. 500; *Minot* v. *Amory,* 2 Cush. 377; *McDonough* v. *Montague,* 259 Mass. 612; *Berger* v. *Burnett,* 95 N. J. Eq. 643, 123 Atl. 879; *Commercial Trust Co.* v. *Gould,* 105 N. J. Eq. 727, 149 Atl. 590.

The New York and Maryland courts hold that such income is to be added as capital to the residuary trust; *Williamson* v. *Williamson,* 6 Paige Ch. (N. Y.) 298; *Matter of Benson,* 96 N. Y. 499; *Matter of Lord,* 134 Misc. 198; *York* v. *Maryland Trust Co.,* 150 Md. 354, 133 Atl. 128; while the Connecticut and English courts hold that the testator's liabilities and taxes should be deemed paid from the capital to an amount which, with the income attributable thereto computed from the testator's death to the date of payment, will equal the amount required to be paid. *Bridgeport Trust Co.* v. *Fowler,* 102 Conn. 318, 128 Atl. 719; *Stanley* v. *Stanley,* 108 Conn. 100, 142 Atl. 851; *Allhusen* v. *Whittell,* L. R. 4 Eq. 295. The New York and Connecticut decisions are based upon the premise that the testator has not directed, either expressly or by clear implication, that such income shall be paid to the life beneficiary.

The questions presented call for a construction of the will of Moses Taylor. It is the duty of the court to ascertain and give effect to the intention of the testator as expressed in his will, if not contrary to established principles of law. This intention is to be ascertained by looking to the language of the whole will and the circumstances surrounding the testator.

By the fifth clause testator gave $250,000 to his executors in trust to pay the net income to his daughter-in-law Cecilia for life; then an absolute gift to his grandson, if living,

and his issue, and, in default thereof, an absolute gift to testator's widow, if living, and if not, said trust fund was to become part of his residuary estate.

By the second clause he gave to his wife, for life, all his personal effects and chattels of every nature and description, without impeachment or accountability for waste. Upon her death he directed that all the residue of said personal effects and chattels should constitute a part of his residuary estate, excepting certain family portraits, silverware books, pictures and porcelain which he gave to his son Reginald for life and, upon his death, to his son Moses 2nd, absolutely.

By the third clause he gave to his wife, for life, his dwelling house at Mt. Kisco, New York, and his stock in the Annandale Farm, Inc., and his residence in Portsmouth, and stock in the Glen Farm, without impeachment or accountability for waste, and the right to take possession of all said property without giving security therefor. He directed that upon her death the real estate at Mt. Kisco and the stock in the Annandale Farm, Inc. should pass into and form a part of his residuary estate. The real estate at Portsmouth and the stock in the Glen Farm he gave to his son Reginald, absolutely.

By the sixth clause the testator directed that all taxes upon each and every devise and bequest should be paid out of the capital "of my residuary estate."

By the seventh clause the testator devised and bequeathed all the rest, residue and remainder of his estate to trustees with full powers of management, and directed them to pay the net income in periodical installments to his wife Edith Bishop Taylor during her life; and upon her death the trustees were directed to set apart a separate trust fund of $1,000,000 and pay the net income therefrom quarterly to the testator's son Francis during his life; and upon his death to pay the principal of said trust fund to his issue, and in default thereof to distribute it among the issue of the testator. The remainder of the residuary estate was to be divided into three shares of equal value and held in trust,

and the net income therefrom paid to his other three children. Upon the death of either of said children, one-third of said trust fund was to be distributed to the issue of such deceased child.

By the eighth clause he appointed his wife and a trust company executors and trustees and directed that no bond be required of either of them.

It is apparent from a reading of this will that the testator's wife was the first object of his solicitude and bounty. He gave her the use of all his estate excepting what would be needed to pay his debts and pecuniary legacies. His children took nothing until after her decease. In his will he states that the provisions for his wife, children and grand-children were made after the most careful consideration of his estate and their several conditions.

The testator knew that the federal and state inheritance taxes on his residuary estate would amount to several millions of dollars. He did not intend that any part of the income from his estate should be used for the payment of these taxes and thereby diminish the amount of income which his wife would receive. To accomplish this result he directed that these taxes should be paid out of the capital of his residuary estate.

The testator probably knew that the inheritance taxes would greatly exceed the amount of his debts, funeral and administration expenses. It is unreasonable to suppose that he intended that any part of the income given to his wife should be used to pay his debts. He knew that his debts would have to be paid and directed his executors to pay them as soon as practicable. If he had intended that any portion of them should be paid out of income, undoubtedly he would have used words indicating such an intention.

A will speaks and takes effect from the testator's death, unless it appears affirmatively that the testator intended otherwise. The life beneficiary of a testamentary trust is entitled to the income on the trust fund from the death of the testator, unless otherwise provided. This court has so

held in *Bailey, Petitioner*, 13 R. I. 543; *Pell* v. *Mercer*, 14 R. I. 412. After these cases were decided, the General Assembly enacted a statute now known as §4328, General Laws 1923, which provides that when the use of income or interest in personal property is given by a will to or in trust for the benefit of a person for life, such a person shall be entitled to receive and enjoy the same from and after the decease of the testator unless it is otherwise provided in such will or instrument. See also *Frelinghuysen* v. *N. Y. Life Ins. & Tr. Co.*, 31 R. I. 150. Under this statute and these decisions the testator presumably knew that the life benefi- ciary of the $250,000 trust fund created by the fifth clause of his will would be entitled to the net income on said trust fund from his death. It is reasonable to suppose that the testator presumed that the same principle of law would apply and control in the ascertainment and payment of the income to his wife as life beneficiary of the trust fund composed of his residuary estate.

In *Bailey, Petitioner*, and *Pell* v. *Mercer*, *supra*, this court considered and adopted the rule laid down by the Supreme Judicial Court of Massachusetts in *Lovering* v. *Minot*, 9 Cush. 151, where it was held that in the case of a bequest of a residuum to trustees, in trust, to pay the income to legatees for life with remainder over, the life legatees were entitled to the actual income from the death of the testator.

A question similar to the one now before this court was decided in the case of the *Old Colony Trust Co.* v. *Smith*, *supra*. The court, after considering the rules adopted by other courts, held that under the provision of a will giving the "rest, residue and remainder" of the estate to pay the income in a certain manner and finally to distribute the principal, the sum, which the executor had received as in- come from money later used by him for the payment of the debts, expenses of administration and specific legacies and had turned over to the trustee with the trust fund, should be paid out by the trustee as income of the trust fund and not

as principal. This case has been criticized by those opposed to the contention of the first life tenant. They claim that the portion of the estate of the testator used for the payment of his liabilities and taxes never became a portion of the "rest, residue and remainder" of his estate, and that consequently the income from that portion of the estate was not disposed of by his will, either expressly or by implication. The testator did not die intestate as to any portion of his property. Upon his death the "rest, residue and remainder" of his estate vested in his executors and trustees, subject to the payment of his debts, administration charges and inheritance taxes was to be disposed of as directed by his will. These words, "rest, residue and remainder," included all the estate left by the testator not previously disposed of by his will, and signified a complete disposition of all his property. The residue is to be determined as of the date of the death of the testator and in the light of the knowledge relative to the estate which is acquired by his executors subsequent to his death. *Old Colony Trust Co.* v. *Smith, supra.*

The New York cases, cited in opposition to the contention made in behalf of the life beneficiary, have been nullified by an act passed by the legislature of that state in 1931. This act expressly provides that, unless otherwise provided by the will, all income from real and personal property earned during the period of administration of the estate of the testator and not payable to others or otherwise disposed of by the will, shall be distributed *pro rata* as income among the beneficiaries of any trusts created out of the residuary estate of such testator and the other persons entitled to such residuary estate. None of such income shall, after such distribution, be added to the capital of the residuary estate, the whole or any part of which is devised or bequeathed in trust or for life or for a term of years, but shall be paid ratably to the life beneficiary of the trust, or to the life tenant, or to the absolute residuary legatee, as the case may be. Unless otherwise directed in the will, income shall be payable to

life beneficiaries of trusts or to life tenants from the date of testator's death. This amendment to the laws was recommended by the Decedent Estate Commission. Surrogate Foley said that "the amendment will greatly simplify, especially in larger estates, the computation of the residue where the will gives the residue wholly in trust or partly in trust and partly absolutely. In general it provides for the payment of all income earned on the funds of the estate during the period of administration to the life tenant entitled to it under the terms of the will, or to the absolute owner of the fractional part of the residue. The present rule of capitalizing income earned during the period of administration on funds of the estate used for the payment of legacies, administration expenses, taxes and debts, has been found to be needlessly complicated. It has imposed burdensome work upon attorneys and accountants. This amendment will change the rule and dispense with the method of computation set forth in the leading case of *Matter of Benson, (supra)* . . . and restated in *Matter of Lord, (supra)*." N. Y. State Bar Ass'n Bulletin, May, 1931, p. 287. The New York law on the question before us is now in accord with that of Massachusetts.

A reason usually given for sustaining the contention made by the life beneficiary is that she is the first object of the testator's bounty. There is no presumption that the testator intended to favor a remote remainderman at the expense of the life beneficiary or that the trust fund should be increased at her expense. If the testator had so intended he could have used apt words showing such an intention. We think, that the rule stated in *Old Colony Trust Co.* v. *Smith, supra,* is in accord with the intention of most testators and also has the merit of simplicity and ease of application.

For these reasons we answer the first and fourth questions in the affirmative. Having arrived at this conclusion, the second and third questions become immaterial.

The parties may present to this court on January 27, 1933, a form of decree in accordance with this opinion.

*Walter A. Edwards, Frederick Bernays Wiener, Edwards &
Angell, Francis Smith, Cadwalader, Wickersham & Taft,* for
Complainants.

*Hinckley, Allen, Tillinghast, Phillips & Wheeler, Chauncey,
E. Wheeler, Noel M. Field,* for Edith Bishop Taylor.

*William A. Spicer, Baker & Spicer,* for certain respondents.

*Huddy & Moulton, Tillinghast & Collins, Greenough,
Lyman & Cross, Richard E. Lyman, Thomas F. Black, Jr.,*
for *amici curiae.*